IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 JUN -8 AM 11: 57

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| DAISY McKINNEY, individually and as Next Friend of WILLIE McKINNEY, an incapacitated person,<br><br>    Plaintiff,<br><br>v.<br><br>KINDRED HEALTHCARE, INC.; KINDRED HEALTHCARE OPERATING, INC.; KINDRED NURSING CENTERS LIMITED PARTNERSHIP d/b/a/ SPRING GATE REHABILITATION AND HEALTHCARE CENTER; RENEE B. TUTOR, in her capacity as Administrator of SPRING GATE REHABILITATION AND HEALTHCARE CENTER,<br><br>    Defendants. | No. 05-0222 Ma/P |

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

This case arises from injuries Willie McKinney allegedly suffered while a patient at Spring Gate Rehabilitation and Healthcare Center ("Spring Gate"). Daisy McKinney ("McKinney"), as the Next Friend of Willie McKinney, brings claims against the defendants for negligence, gross negligence, medical malpractice, violation of the Tennessee Adult Protection Act, T.C.A. §§ 71-6-101, et seq., and breach of contract. McKinney originally filed this action in the Circuit Court of Tennessee for the Thirtieth

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  6-13-05

14

Judicial District at Memphis, Shelby County, on February 9, 2005. The Defendants received notice of the suit on February 24, 2005. On March 24, 2005, the Defendants removed the action to this court on the basis of diversity of citizenship under 28 U.S.C. § 1441 <u>et seq.</u> Before the court is McKinney's motion to remand the action to state court, filed on April 25, 2005. The defendants, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., Kindred Nursing Centers Limited Partnership d/b/a Spring Gate, and Renee B. Tutor ("Tutor") in her capacity as Administrator of Spring Gate (collectively "the Defendants") filed a response on May 9, 2005.

McKinney, in her motion to remand, contends that this court does not have subject matter jurisdiction. Examination of McKinney's Complaint supports her contention. The Complaint makes no claims under federal law and alleges that both McKinney and Tutor are citizens of Tennessee. Thus, the court would not have federal subject matter jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332. The Defendants, however, contend that no cause of action can be brought against Tutor under Tennessee law. Therefore, the Defendants argue that Tutor was fraudulently joined and, therefore, that her presence in this action cannot defeat diversity jurisdiction.

I.  **Applicable Law**

"Removing defendants bear the burden of establishing federal subject-matter jurisdiction." <u>Ahearn v. Charter Township of</u>

2

Bloomfield, 100 F.3d 451, 453-54 (6th Cir. 1996). "Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits." Id. at 454. However, the federal courts should be equally vigilant in protecting the right to proceed in federal court where removal is proper and should not sanction devices meant to prevent a proper removal. See Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186 (1907).

In a recent and analogous case, this court stated the law of fraudulent joinder in the Sixth Circuit:

> As the removing parties, the burden of establishing fraudulent joinder and the presence of federal jurisdiction, which is a heavy one, is upon the defendants. See Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 948-49 (6th Cir. 1994); Mills v. Electronic Data Sys. Corp., 986 F.Supp. 437, 439 (E.D. Mich. 1997).
>
> In Alexander, the Sixth Circuit held that a defendant can establish fraudulent joinder by showing that there is no "reasonable basis for predicting that the state law might impose liability on the facts involved." 13 F.3d at 949 (quoting Bobby Jones Garden Apts., Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)); see also Winburn v. Liberty Mut. Ins. Co., 933 F. Supp. 664, 666 (E.D. Ky. 1996); Ludwig v. Learjet, Inc., 830 F. Supp. 995, 998 (E.D. Mich. 1993). "However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the case must be remanded to state court. Coyne v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999); Jerome-Duncan, Inc. v. Auto-By-Tel L.L.C., 176 F.3d 904, 907 (6th Cir. 1999). Any disputed question of fact, or ambiguities in the controlling state law, must be resolved in favor of the non-removing party. Alexander, 13 F.3d at 949 (citing Carriere v. Sears Roebuck & Co., 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817 (1990)).

Nat Barkley v. Kindred Healthcare, Inc., No. 04-1344, at 2-3 (W.D.

3

Tenn. April 18, 2005).

## II. Analysis

McKinney, in her Complaint, brings a claim for negligence against Tutor. McKinney states that Tutor, as administrator of Spring Gate, "owed a duty to the residents of the facility, including Willie McKinney, to provide services as [a] reasonable administrator[] within accepted standards for nursing home administrators." (Compl. at ¶ 54.) McKinney alleges that Tutor "breached the duties owed to the residents of Spring Gate" because she failed adequately to assess, evaluate, and supervise nursing personnel, failed to hire and train adequate numbers of nursing personnel, failed to hire appropriately qualified nursing personnel to attend to the needs of the patients at Spring Gate, and failed to assign nursing personnel responsibilities appropriate for their education and experience. (Id. at ¶ 55.) According to McKinney, these alleged acts fell below the standard of care required of nursing home administrators and were the actual and proximate cause of a number of injuries suffered by Willie McKinney. (Id. at ¶ 56, 57.) Thus, McKinney's Complaint, on its face, appears to state a claim for negligence against Tutor under Tennessee law.[1]

The Defendants attempt to meet their burden of showing that

---

[1] "A negligence claim [under Tennessee law] requires proof of the following familiar elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." Biscan v. Brown, 160 S.W.3d 462, 478 (Tenn. 2005).

4

there is no "reasonable basis for predicting that the state law might impose liability" on Tutor by arguing that McKinney's Complaint does not "allege a specific act of negligence by [Tutor] which resulted in harm to Mr. McKinney." (Def.'s Resp. at 3.) According to the Defendants, McKinney "seeks to impose vicarious liability on [Tutor] based on the alleged derivative negligence of the employees who provided Mr. McKinney with medical care. . . . However, Tennessee law consistently prohibits holding a manager or administrator responsible for the acts of underservants." (Id.)

In support of their argument, the Defendants cite Parker v. Vanderbilt Univ., 767 S.W.2d 412 (Tenn. Ct. App. 1988), which this court described in Barkley as follows:

> In Parker, the Tennessee Court of Appeals held that the hospital's Chief of Anesthesiology, Dr. Alcantara, could not be held vicariously liable for the negligent acts of a nurse anesthetist working under protocols that Dr. Alcantara had developed. The complaint had alleged no acts of negligence by Dr. Alcantara himself, he was not present in the operating room during the operation in question, and did not oversee or direct the nurse anesthetist's actions. Id. at 416-17. However, the Court of Appeals recognized that a supervisor could be held liable "if his personal negligence . . . was the efficient cause or a coefficient cause of the injury." Id. at 418 (quoting Brown & Sons Lumber Co. v. Sessler, 163 S.W. 812, 813-14 (Tenn. 1914).

Barkley, No. 04-1344, at 4. The Defendants contend that there is "no substantive difference" between the position of Dr. Alcantara in Parker and defendant Tutor in this case. (Def.'s Resp. at 5.) McKinney's Complaint, however, contains allegations of negligent acts committed by Tutor. McKinney alleges that Tutor failed

5

adequately to assess, evaluate, and supervise nursing personnel, failed to hire and train adequate numbers of nursing personnel, failed to hire appropriately qualified nursing personnel, and failed to assign nursing personnel responsibilities appropriate for their education and experience. (Compl. at ¶ 55.)

In addition, although the Defendants do not make the argument explicitly, they imply that under Tennessee law a nursing home administrator does not owe a duty of care to the residents in her nursing home. This court addressed this issue in Barkley:

> The court has found no reported Tennessee cases, and the parties have cited none, addressing the duty of care that a nursing home administrator owes to the facility's residents. Nevertheless, the Court is unwilling to conclude that there is no reasonable basis for the Tennessee courts to hold that a nursing home administrator owes a duty to the residents of that facility to provide adequate care. . . .

Barkley, No. 04-1344, at 5. Just as in Barkley, the parties have not provided any Tennessee case law setting out the duty owed by a nursing home administrator to residents in the nursing home. Under Tennessee law, however, a nursing home administrator who wishes to keep her license has a duty to act in a manner consistent "with the health and safety of the patients in the home in which the licensee is the administrator." T.C.A. 63-16-108(a)(2). Further, Rule 1020-1-.15(1)(b) of the Tennessee State Board of Examiners for Nursing Home Administrators, which has the force of law,[2] defines a nursing

---

[2] See Roh v. Lakeshore Estates, Inc., 241 F.3d 491, 498 (6th Cir. 2001).

6

home administrator as "unfit" or "incompetent" for the purposes of "disciplinary action and licensure or licensure renewal denial" if she:

> "[i]ntentionally or negligently allow[s] abuse or neglect of a resident or plac[es] a resident in a situation where abuse or neglect ... is occurring or is likely to occur."

These rules and statutes demonstrate that under Tennessee law a nursing home administrator who wishes to keep her license has a duty to provide for the well-being of residents in her nursing home. Consequently, the court cannot conclude that there is no "reasonable basis" for predicting that, for the purposes of a negligence action, a Tennessee court would find that a nursing home administrator owes no duty of care to residents in her nursing home. The court finds that there is a "colorable basis" for predicting that McKinney could recover against Tutor and that Tutor was not fraudulently joined.

The Defendants also argue that additional claims McKinney has brought against Tutor under various Tennessee statutes and for negligence per se are improper. Because the court has found that there is a colorable basis for McKinney's ordinary negligence claim against Tutor, the remainder of the Defendants' arguments based on Tennessee law are left to a Tennessee court.

### III. Certification

The Defendants ask the court to certify the issue of whether a resident of a nursing home may bring a claim for negligence

7

against the nursing home administrator to the Tennessee Supreme Court. The Defendants argue that certification is appropriate because the Supreme Court might conclude that "Tennessee law is unclear on administrator liability." The precise contours of Tennessee law are not at issue. What is at issue is whether there is a "reasonable basis" for concluding that Tennessee law would recognize a claim for negligence by a nursing home resident against the nursing home's administrator. The court has found that there is. Whether the claim is ultimately recognized is a question for the Tennessee courts to determine according to the procedures Tennessee has established for adjudicating claims over which Tennessee courts have original jurisdiction. Accordingly, the court declines to certify the issue to the Tennessee Supreme Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is GRANTED and this case is hereby REMANDED to the Circuit Court of Tennessee for the Thirtieth Judicial District.


So ORDERED this 7th day of June 2005.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　SAMUEL H. MAYS, JR.
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 14 in case 2:05-CV-02222 was distributed by fax, mail, or direct printing on June 13, 2005 to the parties listed.

---

Cameron C. Jehl
WILKES & McHUGH- Little Rock
425 West Capitol Ave.
Ste. 3500
Little Rock, AR 72201

F. Laurens Brock
CHAMBLISS BAHNER & STOPHEL
Two Union Square
1000 Tallan Bldg.
Chattanooga, TN 37402

Honorable Samuel Mays
US DISTRICT COURT